Abraham Sohlissel, J.
By information sworn to the 13th day of July, 1961 defendant, the owner of premises No. 560 West Penn Street in the City of Long Beach, was charged with having, on the 7th day of July, 1961, used said premises “ situate in a Residence ‘ A ’ Building Zone District, for more than one family, in violation of Chapter 9, Article 1, Section 9-105.1 of the Municipal Code of the City of Long Beach, duly enacted by the Council of the City of Long Beach on December 3, 1957 ” (count 1).
The second count of said information charges defendant with having caused ‘ ‘ installation of a sink in the basement ’ ’ of said premises “ without obtaining a permit therefor ” in violation of chapter 12 (art. 1, § 12-111) of said Municipal Code.
The statute described in count 1 of this information provides, so far as here material, that, in a Residence “A” district, “ no building or premises shall be used * * * for other than one or more of the following specified uses:
“ 1. A one family detached house for one housekeeping unit only. ’ ’
Before proceeding to a consideration of the answer to the question thus posed it is, this court believes, appropriate to indulge in several preliminary observations.
Although the information here was, as above noted, sworn to the 13th day of July, 1961 the trial of the charges made therein did not take place until the 10th day of November, 1961. In the meantime there had been numerous adjournments virtually all at defendant’s instigation; initially defendant had been represented by counsel but at the trial he acted pro se.
Both at the outset of the actual trial (on Nov. 10) and during preliminary conferences held in chambers several weeks earlier the court reminded defendant of the seriousness of the charges made against him and the substantial consequences of a conviction thereof. Accordingly the court strenuously urged upon defendant the importance of being represented by counsel and strongly counseled him against proceeding to trial without legal representation.
Nonetheless defendant persevered in his insistence that he required no counsel and that he was entirely competent to protect his own interests. Furthermore, he stated to the court that he *253 had consulted with an unnamed and unidentified attorney who had assured him that he had nothing to fear and that the proof adducible by the People could not possibly support a conviction. From the statements then made by defendant and the testimony given by the witness Horan it became apparent that defendant’s reliance was upon Baddour v. City of Long Beach (279 N. Y. 167). Accordingly the Baddour case and its possible impact hereon will be discussed hereinafter.
Except as to the extent and consequences of the Horan tenancy the proof here presented involves little, if any, conflict as to the material facts. It was, indeed, virtually conceded that defendant, his wife, and their children occupy one apartment in these premises, No. 560 West Olive Street, that same is their home and contains a complete housekeeping unit which they occupy independently of all others, including Mr. and Mrs. Horan. It was further testified that the Horans were, on July 7, 1961, and had for some time been in possession of a second apartment in said premises under a two-year lease with a possible one-year extension. Mr. Horan did testify that, although his apartment contained all customary appliances and facilities, neither he nor his wife ever used same but instead, inevitably and invariably, took their meals elsewhere, principally at the home of his mother.
In view of the conclusions reached by this court and about to be announced it appears unnecessary to evaluate Mr. Horan’s testimony or otherwise to comment thereon.
The court is convinced and finds that the device described at the trial and briefly outlined above (even if it be assumed to have been truthfully described by the witness Horan) was a willful and deliberate attempt on defendant’s part to evade and circumvent the zoning laws of this city and to negate and destroy the salutory purposes they are designed to effect. The court cannot too strongly express its condemnation of such tactics.
It now becomes appropriate to approach consideration of the question whether as a matter of law defendant’s conduct constituted a violation of the zoning law and, in particular, of the section thereof mentioned in count 1 of the information.
Essentially the question to be decided is whether, as defendant has insisted, occupancy by two housekeeping units (i.e., two separate, unrelated and self-contained apartments, complete with living, sleeping, sanitary and cooking facilities and the actual use thereof by the occupants of both units) is an essential precondition to a finding of guilt under this information.
Stated otherwise, the question is, can there be a finding of guilt and a consequent imposition of punishment where, as here, *254 it is contended that although these premises contain two separate, unrelated and self-contained housekeeping units, only one of such units actually makes use of the cooking facilities contained therein or must there necessarily be a preliminary finding of actual use of all the facilities in both units.
Having given the matter most thoughtful and earnest consideration (greatly intensified by the defendant’s lack of legal representation) the court has reached the conclusion that defendant’s conduct violated not alone the spirit, but also the letter of the ordinance and finds that he is, as a matter of both law and fact, guilty of the offense charged in count 1 of this information and that such guilt has been established beyond a reasonable doubt.
The court has reached the stated conclusion in part because it believes that the crucial word here is “ only ” which follows the words “ a one family detached house for one housekeeping unit.” The word “ only ” is defined by Webster’s International Dictionary (2d ed.) as being synonymous with “exclusively” or “ solely ”. In the circumstances of this case and upon the proof before this court it cannot be doubted that these premises were not being used on July 7, 1961 as a one-family detached house for one housekeeping unit “exclusively” or “solely”. On the contrary they were coneededly being occupied by one family (defendant’s) making full use of a housekeeping unit and of all its facilities, plus another family (the Horans) occupying a second housekeeping unit but allegedly refraining from full use of same.
Unless the construction placed by the court on this provision is correct, the word ‘ ‘ only ’ ’ is without meaning and a one-family detached house may be occupied by two separate families with independent facilities (including two kitchens) provided only that one of the families refrain from use of its kitchen.
The court cannot believe that such a ridiculous construction or senseless conclusion is required or justified by the unambiguous words of the ordinance.
The court specifically holds as matter of law that even absent a finding that the Horans did actually use their kitchen and other facilities of their apartment a conviction here is not alone possible, but indeed inevitable.
As above noted defendant, at the opening of the trial, suggested that he was relying heavily on Baddour v. City of Long Beach (279 N. Y. 167, supra), which, he suggested, absolved him from liability for the conduct here charged and now found.
The court has carefully re-examined the Baddour decision (once again in the light of defendant’s lack of counsel) and *255 has concluded that that case is of neither aid nor comfort to this defendant.
It is true that the Court of Appeals there said (p. 175) that ‘ ‘ The fact that the property may not be used for the business of keeping roomers and boarders does not bar the occupant from occasionally taking roomers or boarders, upon special consideration, where the practice is merely incidental and accessory to the principal use of the house as a home by the family of the occupant.” This is, it seems to the court, far from judicial approval of the practice which it has found was here pursued by this defendant. Here, unlike the situation under review in Baddour, the defendant did not “ occasionally ” take in a roomer or a boarder; here, on the contrary, he rented a complete apartment to a single tenant for an extended period of time and at a substantial rental. Here, unlike there, the Horan tenancy was not incidental or subordinate to defendant’s occupancy; on the contrary, it was on a par or level with that of defendant in the sense that each occupied a full, complete and self-contained apartment. Here, unlike Baddour, the conclusion is both irresistible and inevitable that defendant has undertaken to convert a legal one-family dwelling into an illegal two-family occupancy and the circumstance (if it be such) that the Horans do not use their kitchen is, for the reasons hereinbefore stated, wholly irrelevant.
It is therefore found and determined that defendant is guilty of count 1 of the information here under review. Count 2 thereof is dismissed for lack of sufficient proof.
Defendant is directed to appear before this court on December 22, 1961 at 10:00 a.m. so that appropriate punishment may be imposed upon him for the violation now found.